UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARLA DANIELLE GROSSKLAUS KUCIREK, Personal Representative for the Estate and Heirs of Theresa Ann Grossklaus (deceased),<br><br>               Plaintiff,<br><br>     v.<br><br>MITCHELL B. JARED and JULIE A. JARED, husband and wife; CLEARWATER COUNTY, IDAHO; CLEARWATER COUNTY SHERIFF'SDEPARTMENT, and CLEARWATERCOUNTY SHERIFF,<br><br>               Defendants. | Case No. 3:17-CV-00028-CWD<br><br><br>**MEMORANDUM DECISION AND ORDER (DKT 24)** |

## INTRODUCTION

Pending before the Court is Defendants' motion for partial summary judgment. (Dkt. 24.) The parties have fully briefed the motion and the Court considered oral arguments on the motion on August 23, 2018. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## FACTUAL BACKGROUND

On July 18, 2014, Theresa Grossklaus was riding her bicycle east on U.S. Highway 12 near Orofino, Idaho. (Dkt. 1 ¶ 10; Dkt. 25 at 1.) At the same time, Clearwater County Deputy Sheriff Mitchell B. Jared was driving east on the highway in an unmarked patrol vehicle. (Dkt. 10 ¶ 11.) Deputy Jared's vehicle hit the bicycle from behind, and Grossklaus's body was propelled from the bike and struck by the still-moving patrol vehicle. *Id.* at ¶ 20. Grossklaus was pronounced dead at the scene due to injuries sustained from blunt force trauma to her head, torso, and extremities. *Id.*; Dkt. 32-3 at 2.

The incident occurred at approximately 10:13 a.m. on a day with clear visibility and dry road conditions. (Dkt. 26 at 2.) Plaintiff's expert witness concluded Deputy Jared's patrol vehicle was traveling at a speed of at least 52 miles per hour, plus or minus 5.4 miles per hour at impact. (Dkt. 29 at 2-3.) The posted speed limit for this section of Highway 12 is 50 miles per hour. *Id.* Plaintiff's expert witness determined also Grossklaus was riding the bicycle within 1.1 feet from the roadway's fog line at the time of impact. *Id.* She was wearing a bicycle helmet. (Dkt. 32-5 at 2.)

Three officers from the Idaho State Police were dispatched to the reported collision. (Dkt. 32-3 at 2.) The Clearwater County chief deputy and Orofino police sergeant also arrived on scene. *Id.* Ms. Grossklaus's body was taken into custody by the county coroner.

The coroner's report concluded Ms. Grossklaus purposefully rode into the path of the patrol vehicle—and the manner of her death was suicide. (Dkt. 32-5 at 5.) The

coroner's conclusion was based in part on information that, just days prior to the incident, Ms. Grossklaus was discharged from State Hospital North in Orofino, Idaho. *Id.* She was involuntarily admitted to the psychiatric unit after driving her vehicle into a tree in an attempt to injure herself. *Id.* The involuntary admission was the second within a week's time based on attempts to crash a vehicle with the goal of self-harm. *Id.* In addition to this evidence, other drivers who passed Ms. Grossklaus on Highway 12 just before the incident stated she had been weaving out into traffic. *Id.*; 32-6 at 1. One driver stated he had to swerve around Ms. Grossklaus to avoid her. *Id.*

Plaintiff's expert witness, however, determined the manner of death was "most appropriately classified as an accident." (Dkt. 32-7 at 4.) The expert's conclusion was based in part on the fact that a full autopsy was not performed on Ms. Grossklaus's body. Plaintiff's expert witness opined, without full autopsy information, it is impossible to determine whether Ms. Grossklaus had potentially suffered an intracranial event, such as a stroke or tumor—resulting in her sporadic moment into traffic. *Id.* at 5. Plaintiff's expert witness stated also that, although Ms. Grossklaus recently had suicidal ideation, there was no evidence to suggest she was suicidal at the time of the incident. *Id.*

Regardless of the manner of death, Plaintiff's expert witness opined the cause of death was clear: the impact from Deputy Jared's vehicle. The expert witness concluded that had Deputy Jared "properly monitored the roadway and observed the bicycle that was present," he would have had "ample time and distance to safely move around the bicycle and avoid impact whether the bicycle was weaving or not." (Dkt. 32-10 at 1.)

# PROCEDURAL BACKGROUND

On July 15, 2016, Carla Danielle Grossklaus Kucirek, the personal representative for the estate and heirs of Theresa Ann Grossklaus ("Plaintiff"), filed a complaint in the District Court of the Second Judicial District of Idaho. Amended on December 23, 2016, Plaintiff's complaint asserts three claims: first, Ms. Grossklaus's death was the result of Deputy Jared's negligence, carelessness, reckless, and grossly negligent conduct; second, as employers of Deputy Jared, Defendants Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff, failed and neglected to ensure Deputy Jared was properly trained; and third, Defendants' careless and negligent actions and omissions violated Ms. Grossklaus's constitutional rights under 42 U.S.C. § 1983.

In addition to naming Deputy Jared, Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff as Defendants, Plaintiff named Deputy Jared's wife, Julie A. Jared. Notably, Mrs. Jared is not specifically mentioned in any of the claims, nor is she mentioned in facts beyond being identified as Deputy Jared's spouse. During the oral argument, Plaintiff's attorney stated Mrs. Jared was included as a party to address potential issues related to community property laws and damages.

Defendants removed this case to the Court pursuant to 28 U.S.C. § 1441. (Dkt. 1.) Defendants filed the present motion for partial summary judgment, (Dkt. 24.) Plaintiff filed a response, (Dkt. 26) and Defendants filed a reply. (Dkt. 33.) The Court permitted Plaintiff to file a sur-reply and supplemental briefing to address new issues raised in Defendants reply, to which Defendants responded in turn. (Dkts. 39 and 40.)

In the pending motion, Defendants seek summary judgment on all claims except state law-based negligence claims asserted against Clearwater County. Specifically, Defendants argue they are entitled to summary judgment on the following claims:

(1)     The 42 U.S.C. § 1983 claim against Deputy Jared because his negligence in operating the patrol vehicle was not the type that rises to the level of a constitutional violation under the Due Process Clause;[1]

(2)     The 42 U.S.C. § 1983 claim against Clearwater County, Clearwater County Sherriff's Department, and the Clearwater County Sheriff, because Plaintiff has not alleged a custom, policy, or practice was the moving force behind Grossklaus's death and Plaintiff's injury;

(3)     The state law negligence claims against Deputy Jared and the Sheriff in their capacities as law enforcement officers, because Plaintiff failed to post a bond as required by Idaho Code § 6-610 before filing an action against these two law enforcement officers;

(4)     The state law claims against Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff for negligent employment and training, because employers cannot be held liable for negligent employment and training when vicariously liable for the employee's torts; and

---

[1] Defendants asserted also Deputy Jared is entitled to qualified immunity. This defense was asserted in the Reply Memorandum. (Dkt. 33 at 4-5.) Because the Court conclusively finds Plaintiff's due process claim fails, it declines to consider the issue of qualified immunity.

(5)     The claims against Julie A. Jared, because Plaintiff failed to allege Mrs.

Jared engaged in conduct related to the incident and thus there is no basis in law or

fact to establish vicarious liability.

The Court will address Defendants' arguments regarding these claims below.

## STANDARD OF LAW

### 1.     Motions for Summary Judgment

Summary judgment is appropriate where a party can show, as to any claim or

defense, "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of

summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural

shortcut," but is instead a tool to prevent factually insufficient claims or defenses "from

going to trial with the attendant unwarranted consumption of public and private

resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment;

the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

To carry this burden, the moving party need not introduce any affirmative evidence –such

as affidavits or deposition excerpts– and may simply point out the absence of evidence to

support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d

528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce

evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 256-57.

The non-moving party must go beyond the pleadings and show "by [its] affidavits, or by

the depositions, answers to interrogatories, or admissions on file" a genuine issue of

material fact exists. *Celotex*, 477 U.S. at 324.

     The party bearing the burden of proof at trial "must establish beyond controversy

every essential element of its ... claim." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d

885, 889 (9th Cir. 2003). A party who does not have the burden "may rely on a showing

that a party who does have the trial burden cannot produce admissible evidence to carry

its burden as to the fact." Fed. R. Civ. P. 56(c)(1)(B) (advisory committee's note.) And

the "party opposing summary judgment must direct [the Court's] attention to specific

triable facts." *S. Cal. Gas Co.*, 336 F.3d at 889.

## DISCUSSION

     Plaintiff raises both state and federal claims in this action. The Court will address

the merits of the motion as it applies to the federal claims followed by the state claims.

## I.    Federal Claims – 42 U.S.C. § 1983 – Purpose and Application

     The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide

relief to harmed parties. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To state a claim

under Section 1983, a plaintiff must allege facts that show a deprivation of a right,

privilege or immunity secured by the Constitution or federal law by a person acting under

color of state law. *Id*. Plaintiff brings two Section 1983 claims: the first is a constitutional

tort claim against Deputy Jared, and the second is a *Monell* claim against the Clearwater County Defendants. The Court will address each claim in turn.

## A.    Negligence of a Government Official

Plaintiff argues Deputy Jared was recklessly indifferent in the operation of his patrol vehicle and such indifference resulted in an unconstitutional deprivation of Ms. Grossklaus's right to life and liberty. (Dkt. 26 at 4.) In turn, Defendants assert Deputy Jared's actions were not of the type or nature to trigger constitutional protection and the Court should grant summary judgment.[2]

Claims involving deprivation of the right to life, liberty or property fall within the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Due Process Clause provides, "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." The clause guarantees more than just fair process—it also substantively bars "certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Historically, the guarantee of due process has been applied to arbitrary acts of government or deliberate decisions of government officials. *Id.* at 311-32.

Given this, the Supreme Court of the United States has held ordinary negligence is far removed from the type of conduct that falls within the traditional gambit of the Fourteenth Amendment's due process protections. *Id.* at 331-32. This bright line fades,

---

[2] During the hearing on the motion, Plaintiff's counsel asserted also there are no genuine issues of material fact and the Court should instead find for the Plaintiff at this stage.

however, when conduct by a government official is more than negligent, but less than intentional or arbitrary. Only when such conduct "shocks the conscience" does it implicate the protections of the Due Process Clause. *Lewis* at 846-47.

Courts use two standards to determine if conduct that is more than negligent but less than arbitrary or intentional shocks the conscience: the purpose to harm standard and the deliberate indifference standard. *Lewis* at 848-50; *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). The purpose to harm standard requires a plaintiff to show the officer acted "maliciously and sadistically for the very purpose of causing harm." *Lewis* at 853 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). The standard is applied when decisions must be made "in haste, under pressure, and frequently without the luxury of a second chance." *Id.* On the other hand, the deliberate indifference standard requires showing the officer consciously disregarded a substantial risk of harm. It applies "only when actual deliberation is possible." *Id.* at 851. Actual deliberation is possible when "extended opportunities to do better are teamed with protracted failure to even care." *Id.* at 853-54. However, "when unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Id.* (quoting *Daniels,* 474 U.S. at 332).

In this matter, Plaintiff asserts the deliberate indifference standard applies, arguing Deputy Jared's conduct was deliberately indifferent and exhibited protracted failure to care about the significant risk posed by inattentive driving. Defendants, on the other

hand, assert Plaintiff's claim fails under either standard, but argue the closest fit within the legal framework is the purpose to harm standard.

       i.      *The Purpose to Harm Standard*

The purpose to harm standard is most readily applied to high speed police chases where decisions are often made in haste, under pressure, and frequently. *Hammel v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 955 F. Supp. 2d 1205, 1211 (D. Or. 2013). In such scenarios, an officer "face[s] an evolving set of circumstances that take place over a short period necessitating fast action and presenting obligations that tend to tug against each other." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (internal citations omitted). Here, the parties do not dispute Deputy Jared was traveling at a speed in excess of the 50 mile per hour posted speed limit at the time of impact with Ms. Grossklaus. (Dkt. 25-1 at ¶ 2; Dkt. 28 ¶ 2.) Neither party presents evidence, however, to show Deputy Jared faced an evolving set of circumstances requiring him to make decisions with haste or under pressure. Instead, the evidence shows only that, at the time of impact, Deputy Jared's vehicle was moving at or around the same rate of speed he had been traveling 10 or more seconds beforehand. Further, there is no evidence Deputy Jared acted maliciously and sadistically to cause harm. Therefore, the purpose to harm standard does not apply to Deputy Jared's conduct.

       ii.     *The Deliberate Indifference Standard*

Unlike the purpose to harm standard, the deliberate indifference standard applies in unhurried situations where the officer has time to deliberate. "To recognize a substantive due process violation in these circumstances," a plaintiff must show the

officer had "time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis* at 853-54. When "extended opportunities to do better are teamed with protracted failure to even care, indifference is truly shocking." *Id.* Put otherwise, to establish deliberate indifference, a plaintiff must show the officer "(1) consciously disregarded (2) a substantial risk (3) of serious harm." *Hammel* at 1213; *see also Browder v. City of Albuquerque*, No. CIV 13-0599 RB/KBM, 2016 WL 3176600, at *5 (D.N.M. Apr. 27, 2016), aff'd sub nom. *Browder v. Casaus*, 675 F. App'x 845 (10th Cir. 2017).

Whether Deputy Jared *consciously* disregarded a *substantial risk* is a nebulous question with multiple facets. To begin with, the activity in question is exceedingly common: When any individual gets in a vehicle and operates it on the roadway, the individual is conscious of the common risks associated with driving, including encountering bicyclists and pedestrians who are using or may be near the roadway. Deputy Jared assumed the same risks while operating his patrol vehicle. In the context of a due process claim, a plaintiff must show the risk disregarded by the officer was somehow more substantial than "normal risks faced by all [drivers] when they are on the road." *Hammel* at 1213. Yet, although the risk must be more substantial, it need not be particularized. A plaintiff need only show deliberate indifference to significant risk of injury to someone in the plaintiff's position—i.e. another bicyclist or pedestrian. *Browder v. City of Albuquerque*, 2016 WL 3176600 at *6 (D. New Mex. April 27, 2016) (citing *Green v. Post*, 574 F.3d 1294, 1303 (10th Cir. 2009) and *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1306 (11th Cir. 2003)). Thus, Plaintiff need show only

that Deputy Jared consciously disregarded the risk he presented to any bicyclists or pedestrians.

The following facts are relevant to the issues of conscious disregard and substantial risk. First, other drivers on the roadway that day reported Ms. Grossklaus was weaving in and out of traffic. Second, the same drivers noticed her presence in the roadway, and were able to safely navigate around her. Third, Deputy Jared was operating his vehicle in excess of the speed limit.

Given the stretch of highway in question, Plaintiff's expert witness espoused if Ms. Grossklaus was riding on or near the fog line, had Deputy Jared noticed her even two seconds before impact, he could have avoided hitting her. (Dkt. 32-10 at 1.) The expert witness opined further that, even if Ms. Grossklaus was weaving in and out of traffic, had Deputy Jared been properly monitoring the roadway, he would have noticed her 10 seconds before impact—giving him sufficient time to avoid hitting her. *Id.*

In another case involving pedestrians, a municipal bus driver hit five people crossing a street in a crosswalk. *Id.* Two of the people died and the other three were injured. *Hammel v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 955 F. Supp. 2d 1205 (D. Or. 2013). The pedestrians and their estates brought a due process claim under 42 U.S.C. § 1983 against the bus driver. The court granted summary judgment in the driver's favor on the basis of qualified immunity. *Id.* at 1214. The court first noted, however, the plaintiffs had provided sufficient evidence regarding whether the driver consciously disregarded a significant risk. *Id.* Plaintiffs alleged the driver was aware of unusual late-night heavy foot traffic in the area due to a comedy show just getting out, and knew the

particular turn she was making was dangerous because her view into the crosswalk was partially blocked by a pole, but the driver proceeded anyway. *Id.*

This matter is distinguishable from *Hammel.* Here, Plaintiff alleges Deputy Jared knew bicyclists and pedestrians might have been present and had a right to use the shoulder of Highway 12. Plaintiff asserts also Deputy Jared knew inattentive driving posed a serious risk to bicyclists and pedestrians but proceeded to drive inattentively anyway. There is nothing about these facts that distinguishes Deputy Jared from any other driver on the Highway that day.

In consideration of such facts, the Court notes also the uneasy fit of this scenario with situations that typically invoke the deliberate indifference standard. This is perhaps best illustrated by cases involving officials' deliberate indifference to the needs of people in their custody or care. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (Cir. 1997) (prison officials' deliberate indifference to the medical needs of pretrial detainees implicated due process protections); *see also Youngberg v. Romeo*, 457 U.S. 307, 102 (1982) (state mental institution personnel were obligated to consider and make reasonable provision for a patient's welfare). These cases, and others like them, provide examples of situations where officials had a truly extended opportunity to deliberate and nevertheless continued to consciously disregard a significant risk of harm to those in their custody or care.

Furthermore, the Supreme Court of the United States has cautioned that due process protections do not "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). To this end, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id*. Rather, Due Process Clause protections follow the concerns of the Constitution of the United States—the "large concerns of the governors and the governed." *Id*.

Whether government officials are to be held to a higher standard than the public in the operation of vehicles –one of the most common-place activities of people today– is an important question. For the deliberate indifference standard to have "any meaning" it must require more than just an opportunity to change a vehicle's course. *Hammel v. Tri-County*, 955 F. Supp. 2d at 1212. "Actual deliberation […] implies that the state actor must have the ability to take a step back and reflect on [his] course of conduct. *Id.*

Applying these principles, and after careful consideration, the Court finds Plaintiff has failed to proffer evidence showing more than a failure by Deputy Jared to change course. Instead, this situation is exactly the sort where an injury that attends living together in society has resulted—and thus is likely best suited for resolution by tort law. A traffic incident, however tragic, does not implicate the great concerns that arise between the governors and the governed. For these reasons, the Court will grant Defendants' motion for summary judgment as to the Section 1983 claims asserted against Deputy Jared.[3]

---

[3] Although there is insufficient evidence presently before the Court to raise a genuine issue of material fact that this scenario is not that of a traffic incident involving inattentive driving, the Court may conclude otherwise after evidence is presented at the time of trial. In this regard, the Court then would consider the qualified immunity arguments as well. *See supra* note 2 at page 5.

## B.     Claims Against a Municipality

In addition to the 42 U.S.C. § 1983 claim asserted against Deputy Jared, Plaintiff asserts *Monell* claims against against Clearwater County, Clearwater Sheriff's Department, and the Clearwater County Sheriff. The first question in any Section 1983 analysis is whether plaintiff has established a violation of a federal constitutional right. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978). Because the Court finds Deputy Jared did not deprive Ms. Grossklaus of her substantive due process rights, the Clearwater County Defendants are entitled to summary judgment on all of Plaintiff's *Monell* claims. Furthermore, even if the Court had determined Plaintiff had a triable Section 1983 claim, based on the record before the Court, there is no evidence offered of custom, policy, or practice to support a claim for *Monell* liability.[4]

## II.     State Law Claims

Defendants move for partial summary judgment on three categories of state law claims set forth by Plaintiff: state law negligence in hiring and training claims asserted against Clearwater County, the Clearwater County Sheriff's Department, and the Clearwater County Sheriff; claims asserted against Julie A. Jared; and state law claims asserted against Deputy Jared and the Sheriff. For the following reasons, the Court will grant the motion as to the state law negligence and hiring claims and the claims against

---

[4] Although the Court will grant Defendants' motion as to all of the federal law claims, the Court finds it would not promote the speedy and efficient resolution of this matter for Plaintiff to have to begin anew in state court to establish and reargue the issue of deliberate indifference. In consideration of this and based on the arguments and inferences of fact Plaintiff asks be taken, the Court will, in its discretion, retain jurisdiction over this case. *See* 28 U.S.C. § 1367(c)(3); *Foster v. Wilson,* 504 F.3d 1046, 1051 (9th Cir. 2007).

Julie A. Jared, but will deny it as to the state claims asserted against Deputy Jared and the Sheriff.

### A. Negligence in Training and Hiring Claims

Plaintiff asserts Defendants Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff failed and neglected to ensure proper training of Deputy Jared during his employment and are directly and proximately liable for damages resulting from the incident. In reply, Defendants assert that employers cannot be held liable for negligent employment and training when they are vicariously liable for an employee's torts.

Defendants admit Deputy Jared was acting within the scope of his employment with Clearwater County at the time of the incident, but deny he was negligent. However, in the motion, Defendants cite the Idaho Tort Claims Act, Idaho Code § 6-903, which states that governmental entities are subject to liability for money damages arising out of the entity's negligence or wrongful acts and those of its employees acting within the course and scope of their employment or duties. Idaho Code § 6-903(1). Defendants assert, because the municipality already has responsibility for Deputy Jared's actions under the Idaho Tort Claims Act, it is improper to allow Plaintiff to proceed on theories of negligent employment and training. Plaintiff does not supply any argument in opposition.

This question has been considered by a variety of courts in circumstances largely analogous to this case. *Rothwell v. Werner Enterprises, Inc.*, 859 F. Supp. 470, 474 (D. Kan. 1994); *McHaffie v. Bunch*, 1994 WL 72430, at *7-12, (Mo. App. S.D. March 11,

1994); *Wise v. Fiberglass Systems, Inc.*, 718 P.2d 1178, 1181 (D. Idaho 1986) (*citing*

*Elrod v. G & R Constr. Co.*, 275 Ark. 151, 628 S.W.2d 17 (1982); *Clooney v. Geeting*,

352 So.2d 1216, 1220 (Fla. App. 1977); *Willis v. Hill*, 159 S.E.2d 145 (Ga. App. 1967),

rev'd on other grounds, 161 S.E.2d 281 (Ga. 1968); *Houlihan v. McCall*, 78 A.2d 661 (D.

Md. 1951)). In those matters, the employers admitted liability on a theory of respondeat

superior and the plaintiffs were not seeking or could not seek punitive damages. In each

circumstance, the courts found the plaintiffs were prohibited from pursuing independent

negligence in employment or training claims against the employers.

The following reasoning underlies the prohibition:

> In cases where A is sought to be held for an injury caused by B, the employer-entrustor [...], the "breach of duty" by A is nothing more than a theory under which responsibility for B's conduct is tacked on to A. The result is the same whether A's "duty" is to be called primary or vicarious. If, then, the only purpose and relevance of evidence showing the employee's incompetence and the employer's knowledge thereof is to show a liability link from the employee to the employer, and this link is admitted to exist, the evidence should be excluded under the general rule regarding undisputed matters, leaving as the only question the one contested issue—whether the employee's negligence caused the injury.

*Wise*, 718 P.2d 1178, 1181-82 (Idaho 1986) (citing *Willis*, 159 S.E.2d at 150).

In *Wise*, the Idaho Supreme Court held that, if an owner of a vehicle "has already

admitted liability under the doctrine of respondeat superior, it is improper to allow a

plaintiff to proceed against the owner [...] on the independent theories of negligent

entrustment and negligent training and hiring" if the plaintiff has not also made a claim

for punitive damages. *Id.* at 1181. During the trial in *Wise*, the employer admitted full

responsibility accepting liability for any negligence attributable to its employee. *Id.* at 1180.

Here, the employer Defendant admits, through citation to Idaho Code § 6-903, should Deputy Jared's acts be found negligent or wrongful, his employer, as a government entity, is vicariously liable for damages caused by his actions. Furthermore, Plaintiff does not seek punitive damages in connection with this claim. (Dkt. 1-1 at 16-17.) Thus, the reasoning underlying the prohibition is applicable in this case. Therefore, the Court will grant Defendants' motion for partial summary judgment as to the independent negligence in employment and training claims asserted against Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff.

### B. Claims Asserted Against Julie A. Jared

Relatedly, the Court will also grant Defendants' motion as to the claims asserted against Julie A. Jared. As set forth above, the employer Defendant has admitted it is vicariously liable for damages should Deputy Jared's acts be found negligent or wrongful. During the hearing on the motion, Plaintiff's attorney stated Julie A. Jared was included as a named defendant at the pleading stage as a safety measure—in case community property issues arose regarding an ability to collect damages for Deputy Jared's conduct. Therefore, given Defendant employers' acceptance of liability of their employee, if any, there is no factual basis or equitable basis to support continuing claims against Julie A. Jared. Thus, the Court will grant Defendants' motion for partial summary judgment as to these claims.

### C.    Idaho Code § 6-610 – The Bond Requirement

Finally, Defendants argue the state law claims against Deputy Jared and the

Clearwater County Sheriff cannot be pursued, because Plaintiff failed to post the bond

required by Idaho Code § 6-610. Plaintiff does not dispute her failure to post the bond,

but instead argues: (1) Defendants waived the ability to raise the bond issue by not

including it as an affirmative defense in their answer; (2) the statute is unworkable, and

does not provide a clear pre-trial framework for plaintiffs like her; and (3) the bond

requirement is unconstitutional because it does not comport with the dictates of the Due

Process Clause of the Fourteenth and Fifth Amendments to the United States

Constitution.

The Court will discuss both the question of Defendants' potential waiver and the

precedent applicable to a plaintiff's failure to timely post bond. However, because the

constitutionality of the bond requirement was raised by Plaintiff in her supplemental brief

as a defense to the motion, and as explained below, because the Court will conclusively

resolve the issue in Plaintiff's favor, in its discretion, the Court will decline to determine

the merits of the constitutional challenge.

Section 6-610(2) provides the bond requirement:

(2) Before any civil action may be filed against any law enforcement officer
or service of civil process on any law enforcement officer, when such action
arises out of, or in the course of the performance of his duty, or in any action
upon the bond of any such law enforcement officer, the proposed plaintiff or
petitioner, as a condition precedent thereto, shall prepare and file with, and
at the time of filing the complaint or petition in any such action, a written
undertaking with at least two (2) sufficient sureties in an amount to be fixed
by the court. The purpose of this requirement is to ensure diligent prosecution
of a civil action brought against a law enforcement officer, and in the event

judgment is entered against the plaintiff or petitioner, for the payment to the defendant or respondent of all costs and expenses that may be awarded against the plaintiff or petitioner, including an award of reasonable attorney's fees as determined by the court.

Sections 4 and 5 provide further pertinent details:

(4) At any time during the course of a civil action against a law enforcement officer, the defendant or respondent may except to either the plaintiff's or petitioner's failure to file a bond or to the sufficiency of the sureties or to the amount of the bond.

(5) When the defendant or respondent excepts to the plaintiff's or petitioner's failure to post a bond under this section, the judge shall dismiss the case.

Plaintiff acknowledges the bond requirement applies to the state law claims against Deputy Jared and the Sheriff. (Dkt. 26 at 6.) However, Plaintiff asserts Defendants failed to assert a timely and appropriate objection as an affirmative defense within the answer to the amended complaint. Defendants first raised the issue within the present motion for partial summary judgment. (Dkt. 25 at 4.) Plaintiff argues, therefore, Defendants waived the bond requirement. (Dkt. 26 at 6.)

The question of waiver is not clear cut. It first was addressed by the Idaho Supreme Court in 1973. *Garren v. Butigan*, 509 P.2d 340, 341 (Idaho 1973). In *Garren*, the state defendants filed an answer prior to asserting the lack of bond in a later filed motion to dismiss. *Id.* at 341. The court concluded "lack of a bond is a matter of avoidance or affirmative defense" that is waived if not made "before pleading if a further pleading is permitted." *Id.* at 433, citing Idaho R. Civ. P. 12(b) (Section 6-610's bond requirement was interpreted to be a waivable affirmative defense).

The question of waiver by defendants has also been addressed by this Court.[5]

Generally, the Court has interpreted Section 6-610 to permit defendants to raise the issue

of failure to post bond at any point during the suit. *Ayala v. United States*, No. CV 09-14-

S-BLW, 2010 WL 299153 (D. Idaho Jan. 19, 2010). In *Ayala*, the plaintiff did not

comply with the bond requirement and argued defendants waived the requirement by

failing to raise the defense in their answer to the complaint. *Id.* at *1. Although the

procedural facts in *Ayala* matched those in *Garren*, the Court found in opposite of the

Idaho Supreme Court, holding the law expressly provides that "a defendant may object to

the plaintiff's failure to file a bond '[a]t any time during the course of [the] civil action."

The Court found it had no choice but to dismiss the state law claims as to the defendant

law enforcement officers. *Id.*; *See* Idaho Code § 6-610(4-5).

The following year, in 2011, the Court again addressed the issue of waiver by

defendants. *Pauls v. Green*, 816 F. Supp. 2d 961 (D. Idaho 2011). The plaintiff in *Pauls*

failed to post the required bond. Defendants argued, in a motion filed after their answer,

the Court was required to dismiss the state law claims. *Id.* at 974. In turn, the plaintiff

asserted the defendants were estopped from raising the issue—citing *Garren*. *Id.* Unlike

the *Garren* defendants, however, the *Pauls* defendants did raise the bond requirement as

an affirmative defense in their answer. *Id; See* case no. 4:08-CV-00337-BLW (Dkt. 14 at

---

[5] *See Walker v. City of Post Falls*, 2007 WL 2609899, at *1 (D. Idaho Sept. 6, 2007); *Stack v. Shoshone Cty.*, 2009 WL 2169885 (D. Idaho July 15, 2009); *Ayala v. United States*, 2010 WL 299153 (D. Idaho Jan. 19, 2010); *Greenwade v. Idaho State Tax Commission*, 808 P.2d 420 (Ct. App. 1991); *Pauls v. Green*, 816 F. Supp. 2d 961, 974 (D. Idaho 2011).

6.) Thus, the Court readily distinguished the cases and held the *Pauls* defendants had not waived the defense. *Id.* at 974-975.

Although it is the Court's usual practice to permit defendants to raise the issue of at any point during the suit, there is a well-established exception to the application of the before-filed bond requirement— the case of an indigent plaintiff. Idaho law expressly allows for plaintiffs who cannot afford to post bond to request a waiver of the requirement from a court through the provisions of Idaho Code § 31-3220. *See Beehler v. Fremont Cty.*, 182 P.3d 713, 717 (Idaho Ct. App. 2008).

Beyond the indigence waiver, the Court has granted leeway to plaintiffs who fail to meet the requirement if they provide a reason for the failure. *Bales v. ADA Cty.*, 2016 WL 1275595, at *1 (D. Idaho Mar. 31, 2016). For instance, in *Bales*, the plaintiff asserted she was unable to find a bonding company who would write a bond for purposes outlined in the statute. *Id*. The Court, although skeptical of the purported reason, nevertheless allowed the plaintiff 30 days to secure bonding and to supplement the record. *Id*. In another matter, the plaintiffs attempted to secure a bond but were rejected by four surety companies. *Cameron v. Owyhee Cty.*, WL 2594953, at *3 (D. Idaho June 22, 2010).

In this case, Plaintiff cites the lack of clarity for obtaining a meaningful pre-trial process to establish the bond as one reason for failing to file it. She also raises a constitutional challenge—thus disagreeing with its effect and propriety. Given this scenario, the conflicts in precedent, and this Court's practice of granting leeway to allow late-filing of the bond, the Court will deny Defendants' motion regarding state claims to which Section 6-610 may apply and will permit Plaintiff to late-file the bond.

## CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for partial summary judgment in part and deny it in part. Plaintiff failed to set forth facts demonstrating genuine disputes of material fact for trial regarding the 42 U.S.C. § 1983 claims, the state law negligence in hiring and training claims, and all claims asserted against Julie A. Jared. The Court will deny the motion as to the state law claims that fall under Idaho Code § 6-610.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion for Partial Summary Judgment (Dkt. 24) is **GRANTED in part** and **DENIED in part**.

2) A telephonic hearing will be held between the Court and the parties on September 27, 2018 at 10:30 a.m. M.S.T. The purpose of the hearing is to determine a reasonable bond amount and to set pretrial and trial deadlines. Plaintiff must file the bond within 30 days of the hearing.[6]

DATED: September 05, 2018

Candy W. Dale
U.S. Magistrate Judge

---

[6] Plaintiff must initiate the conference call by placing it to (208) 334-9945 and must have all appropriate parties on the line.