UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CARLA DANIELLE GROSSKLAUS KUCIREK, Personal Representative for the Estate and Heirs of Theresa Ann Grossklaus (deceased),<br><br>              Plaintiff,<br><br><br>MITCHELL B. JARED and JULIE A. JARED, husband and wife; CLEARWATER COUNTY, IDAHO; CLEARWATER COUNTY SHERIFF'S DEPARTMENT, and CLEARWATER COUNTY SHERIFF,[1]<br><br>              Defendants. | Case No. 3:17-CV-00028-CWD<br><br>**MEMORANDUM DECISION AND ORDER ON MOTIONS *IN LIMINE* (DKT 50; DKT 51)** |

       Two motions *in limine* are pending before the Court: Defendants' Motion *in Limine* (Dkt. 50) and Plaintiff's Motion *in Limine* to Exclude Evidence, Testimony, Reference or Argument. (Dkt. 51.) On March 21, 2019, the Court heard oral argument on the motions. For the reasons that follow, the Court will grant in part and deny in part Defendants' motion and will also grant in part and deny in part Plaintiff's motion.

---

[1] The parties are directed to file a stipulation for amendment of case caption should they agree the caption of this case should be updated to include only defendants remaining in this matter. The stipulation must include the proposed amended caption.

## FACTUAL BACKGROUND

This case centers around a highway collision between a pickup truck and a bicyclist that left the bicyclist dead at the scene of the accident. On July 18, 2014, Theresa Grossklaus was riding a bicycle east on U.S. Highway 12 near Orofino, Idaho. (Dkt. 1 ¶ 10; Dkt. 25 at 1.) At the same time, on-duty Clearwater County Deputy Sheriff Mitchell B. Jared was driving east on the highway in an unmarked patrol vehicle—a Dodge Ram pickup truck. (Dkt. 10 ¶ 11.) Deputy Jared's truck hit the bicycle from behind, and Grossklaus's body was propelled from the bicycle and struck by Deputy Jared's still-moving truck. *Id.* at ¶ 20. Grossklaus was pronounced dead at the scene due to injuries sustained from blunt force trauma to her head, torso, and extremities. *Id.*; Dkt. 32-3 at 2.

The cause of Ms. Grossklaus' death, blunt force trauma, is not at issue. However, the question of whether she caused or contributed to the accident that resulted in her death is central to the claims and defenses in this case. The following facts relate to that issue and to the parties' motions *in limine*.

The collision occurred at approximately 10:13 a.m. on a day with clear visibility and dry roadway conditions. (Dkt. 26 at 2.) According to the record before the Court, there are multiple eye witnesses who reported seeing Ms. Grossklaus on the highway the day of the collision.[2] (Dkt. 55 at 4.) Two of eye witnesses saw and passed Ms. Grossklaus

---

[2] This summary of what eyewitnesses saw is based on information the Court reviewed in the record or received at the time of the hearing on the motions *in limine*. This summary does not constitute or amount to factual findings, which are solely within the province of the jury.

on the roadway prior to the collision. The first of these eye witnesses reported passing Ms. Grossklaus on the bicycle sometime prior to the collision. (Dkt. 61-1.) He stated that Ms. Grossklaus was swerving into the middle lane of traffic, approximately 8 to 10 feet from the road's shoulder and in front of cars *Id.* Another eye witness, traveling on a motorcycle, passed Ms. Grossklaus minutes before the collision and stated that she was weaving in and out of the traffic lane. (Dkt. 52 at 17.)

Several other eyewitnesses were driving behind Deputy Jared's truck. One of these eyewitnesses was traveling approximately 150 feet behind Deputy Jared's truck.[3] This driver stated that she saw Ms. Grossklaus on the bicycle just prior to the collision and that Ms. Grossklaus was riding the bicycle on or near the road's white fog line at that time. This witness saw the collision occur from behind Deputy Jared. The second of these witnesses was driving 300 feet behind Deputy Jared's truck (and thus, also behind the first of these eye witnesses). (Dkt. 52 at 29-30.) The driver stated that he saw Ms. Grossklaus riding near the fog line but did not witness the collision because he looked away just before impact. *Id.* According to the record before the Court, Deputy Jared did not see Ms. Grossklaus until the moment just before impact or at the moment of impact. (Dkt. 55 at 4.)

Plaintiff retained an accident reconstructionist who opined that Deputy Jared's vehicle was traveling at a speed of 52 miles per hour, plus or minus 5.2 miles per hour at

---

[3] Information about what this witness observed was offered by Plaintiff's counsel during the hearing on the motion and is not, to the Court's review, in the briefing record.

impact. (Dkt. 29 at 2.3.) The posted speed limit for the section of Highway 12 where the collision occurred was 50 miles per hour. Plaintiff's expert determined also Ms. Grossklaus was riding the bicycle within 1.1 feet from the roadway's fog line at the time of impact. *Id.* She was wearing a bicycle helmet. (Dkt. 32-5 at 2.) However, the precise location Ms. Grossklaus was riding on the roadway at the time of impact is a contested fact to be determined by the jury in this case.

Three officers from the Idaho State Police were dispatched to the site of the collision. (Dkt. 32-3 at 2.) The Clearwater County chief deputy and Orofino police sergeant also arrived on scene. *Id.* Ms. Grossklaus's body was taken into custody by the Clearwater County Coroner, William Rambeau. Mr. Rambeau produced a report, the contents of which will be discussed in further detail below as it relates in part to Plaintiff's motion *in limine*.

## PROCEDURAL BACKGROUND

On July 15, 2016, Carla Danielle Grossklaus Kucirek, the personal representative for the estate and heirs of Theresa Ann Grossklaus, filed a complaint in the District Court of the Second Judicial District of Idaho. Amended on December 23, 2016, Plaintiff's complaint asserts three claims: first, that Ms. Grossklaus's death was the result of Deputy Jared's negligence, carelessness, reckless, and grossly negligent conduct; second, that as employers of Deputy Jared, Defendants Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff, failed and neglected to ensure Deputy

Jared was properly trained; and third, Defendants' careless and negligent actions and omissions violated Ms. Grossklaus's constitutional rights under 42 U.S.C. §1983.

Defendants removed this case to the Court pursuant to 28 U.S.C. §1441. (Dkt. 1.) On January 10, 2018, Defendants filed a motion for partial summary judgment (Dkt. 24), which the Court granted in part and denied in part. (Dkt. 43.) The Court granted Defendants' motion for summary judgment as to the Section 1983 claim asserted against Deputy Jared, noting, however, the potential for sufficient evidence to be presented at trial to revive the claim. (*See* Dkt. 43 at 14 n. 3.) The Court also granted the motion as to the *Monell* claims asserted against Clearwater County, Clearwater County Sheriff's Department, and the Clearwater County Sheriff. *Id.* at 15. Finally, the Court granted the motion as to the state law negligent hiring claims as well as the claims against Deputy Jared's wife, Julie. A. Jared. The Court denied Defendants' motion as to the state law negligence claims asserted against Deputy Jared. *Id.* at 16-22. The pending motions *in limine* relate to the presentation of evidence regarding the negligence claims presently set for a jury trial beginning April 23, 2019.

## LEGAL STANDARDS

**A.     Motions *in Limine***

There is no express authority for motions *in limine* in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence. Nevertheless, these motions are well recognized in practice and by case law. *See, e.g., Ohler v. United States*, 529 U.S. 753,

758 (2000). The key function of a motion *in limine* is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

Generally, motions *in limine* excluding broad categories of evidence are disfavored—as such issues are more fairly dealt with during trial as the admissibility of evidence arises. *Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Additionally, it is sometimes necessary to defer ruling until trial when a better estimate of the impact of the evidence on the jury can be made by the trial judge. *Crawford v. City of Bakersfield*, 2016 WL 5870209, at *2 (E.D. Cal. Oct. 6, 2016).

## B. Burdens of Proof for Claims and Defenses

Plaintiff's claims against Deputy Jared center on establishing his negligence, which requires meeting the burden of proof on each of the following elements: (1) Deputy Jared was negligent; (2) Ms. Grossklaus was injured; (3) Deputy Jared's negligence was a proximate cause of the injury to Ms. Grossklaus; and (4) the elements of damage and the amounts thereof. IDJI 1.41.4.1. The Court anticipates Defendants' primary defense will be that Ms. Grossklaus was contributorily negligent. On this defense, the Defendants have the burden of proof on the following propositions: (1) Ms. Grossklaus was negligent; and (2) Ms. Grossklaus's negligence was a proximate cause of her own injuries.

Negligence is "the failure to use ordinary care in the management of one's property or person." IDJI 2.20. Where "ordinary care means the care a reasonably careful person would use under circumstances similar to those shown by the evidence." *Id.*

Negligence may consist of "the failure to do something which a reasonably careful person would do" or doing "something a reasonable careful person would not do under circumstances similar to those shown by the evidence." It is for the jury to decide how a reasonably careful person would act under the circumstances shown by the evidence. Each party involved in an occurrence has a duty, both before and at the time of the occurrence, "to use ordinary care for the safety of both themselves and each other." IDJI 2.00.2.

> Proximate cause can be described as the cause, which:
>
> [I]n natural or probable sequence, produced the injury, the loss or the damage complained of. It need not be the only cause. It is sufficient if it is a substantial factor in bringing about the injury, loss or damage. It is not a proximate cause if the injury, loss or damage likely would have occurred anyway. There may be one or more proximate causes of an injury. When the negligent conduct of two or more persons or entities contributes concurrently as substantial factors in bringing about an injury, the conduct of each may be a proximate cause of the injury regardless of the extent to which each contributes to the injury.

IDJI 2.30.1

With these evidentiary burdens in mind, the Court will analyze the merits of the parties' motions *in limine*.

## ANALYSIS

### A.      Defendants' Motion *in Limine*

Defendants' motion *in limine* has seven parts. In the seventh part, Defendants argue Plaintiff's expert witnesses' testimony should be limited to the opinions within the content of their reports, citing Federal Rule of Civil Procedure 26(a)(2)(B)(1). Plaintiff

does not contest this portion of the motion and agrees Plaintiff's experts' testimony will be so limited. As such, the Court will discuss only the first six parts of Defendants' motion below.

### 1.     *Carla Kucirek's Testimony*

Defendants ask the Court to preclude Carla Kucirek, the personal representative of the estate of Theresa Grossklaus and a daughter of Theresa Grossklaus, from testifying concerning medications her mother had or had not taken on the day of and days prior to the collision, on July 18, 2014. Defendants assert Ms. Kucirek "lacks the requisite scientific qualifications to offer an opinion on the issue." (Dkt. 50 at 2.) They argue also that Ms. Kucirek lacks first-hand knowledge that would be required for her to testify as a fact witness on this issue.

In response, Plaintiff argues Defendants have provided no support for their argument that scientific qualifications are necessary for Ms. Kucirek to have knowledge of what medications were prescribed to her mother, what her mother's habits with respect to taking her medications were, and the amount of her mother's medication that remained following the collision at issue. (Dkt. 57 at 2.) Plaintiff argues these facts fit within the personal knowledge requirement of the Federal Rules of Evidence.

Although not cited directly, the Court infers that Plaintiff's argument references Federal Rule of Evidence 602, which states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Notably, "[e]vidence to prove personal

knowledge may consist of the witness's own testimony. *Id.* In other words, "[a] witness has personal knowledge only when testifying about events perceived through physical senses or when testifying about opinions rationally based on personal observation and experience. C*alifornia Found. for Indep. Living Centers v. Cty. of Sacramento*, 142 F. Supp. 3d 1035, 1045 (E.D. Cal. 2015) (citing *United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006). Lay witness testimony is helpful when it assists the jury in determining a fact in issue. Fed. R. Evid. 701(b). However, lay witness testimony is unhelpful and thus inadmissible when it is "mere speculation" or when it "usurps the jury's function" by telling the finder of fact what result to reach. *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007); *see* J. Weinstein & M. Berger, Weinstein's Evidence § 701.03[2] (2d ed. 2014).

As discussed further below in regard to Plaintiff's motion *in limine*, evidence regarding Ms. Grossklaus's mental health status may be probative of whether she was biking safely when the collision occurred. During the course of trial, should facts concerning what medication or medications Ms. Grossklaus had taken the day of the collision or on the days leading up to the collision become relevant, the Court finds that Ms. Kucirek may, with proper foundation, testify as a lay witness about her first hand observations of what type of medications were in her mother's apartment immediately after the collision and her first hand observations of how much of the medications remained untaken.

Defendants also seek to exclude Ms. Kucirek's testimony concerning a conversation she had with an Idaho State Police (ISP) forensic scientist who allegedly informed her that Ms. Grossklaus's blood was not tested for the presence of certain of the medications she was prescribed. Defendants assert Ms. Kucirek's testimony regarding this conversation is hearsay. Plaintiff did not respond to this argument in her response. The Court agrees with Defendants, however, that Ms. Kucirek's testimony about what the ISP forensic scientist told her is likely inadmissible hearsay. Therefore, Defendant's motion is granted in this respect.

**2.**      ***Dr. Ogden's Opinions***

Defendants argue the Court should preclude one of Plaintiff's experts, Jerry S. Ogden, Ph.D., P.E., from offering opinions related to the state of mind of Deputy Jared just prior to the collision, as well as to his opinion related to the legal permissions Ms. Grossklaus had to ride the bicycle at the location of the collision. In response, Plaintiff argues Defendants fail to challenge either the facts relied upon by Dr. Ogden or the methodology he used to reach his opinions.

Defendants challenge the following specific opinions provided by Dr. Ogden in his expert report:

> It can be stated to within a reasonable degree of engineering probability that the position of the right-side wheels of the Dodge at or very near the edge of the roadway at impact clearly indicates the Dodge driver had not considered the presence of the bicycle within the lane of traffic, nor provided proper berth to safely pass.

> It can be stated to within a reasonable degree of engineering probability that the Dodge driver was inattentive and/or distracted for 10 seconds or more as

he approached the impact location, which resulted in the impact with the rear of the bicycle within the traffic lane.

The position of the right-side wheels of the Dodge at or very near the outside edge of the roadway at impact clearly indicates the Dodge driver had not considered the presence of the bicycle within the lane of traffic.

The bicycle rider was a permitted roadway user of the outside traffic lane at this location….

(Dkt. 32-10 at 1-2.)

Defendants challenge the first three listed opinions by arguing Dr. Ogden "can not know what was in [Deputy Jared's] mind." *Id.* As pointed out by Plaintiff, however, Defendants provide no argument that Dr. Ogden's underlying analysis was not based on scientifically valid principles. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S 137 (1999); *see also Daubert v. Merrell Dow Pharms.*, 516 U.S. 869 (1995).

Dr. Ogden holds a Doctor of Philosophy Engineering and Applied Science from the University of California, Denver. (Dkt. 32-1 at 2.) His research focus was in traffic and transportation engineering as well as highway design and engineering mechanics. *Id.* He is also a registered professional civil engineer in Idaho (and multiple other states). *Id.* at 3. Dr. Ogden is also a specialist in accident investigation and reconstruction. *Id.* at 2-3. Dr. Ogden's underlying analysis determined the positioning of Deputy Jared's truck and the bicycle at the time of impact based on the physical evidence. (Dkt. 32-8 at 1.)

Considering Dr. Ogden's background, expertise, and the content of his report in this case, the Court finds Defendants' argument regarding the first three opinions unpersuasive. Dr. Ogden's opinion testimony is provided to explain, based on scientific

evidence about driver reaction times and a review of the data related to the incident, how long a driver would need to be inattentive for the incident to unfold as it did, and whether the facts indicate the driver noticed the bicycle rider (i.e. was attentive to roadway conditions and hazards) prior to the collision. For this reason, the motion as it relates to the first three opinions above, will be denied.

Defendants challenge the fourth listed opinion as a legal opinion that Dr. Ogden is not qualified to offer. Plaintiff argues that, though phrased as an opinion, "Dr. Ogden's observation regarding a bicycle rider being a permitted roadway user is merely a recognition" of Grossklaus's "location and orientation." (Dkt. 37 at 3.) However, the opinion that is challenged does more than simply recognize Grossklaus's location and orientation—it states that, as a bicycle rider, she was "a permitted roadway user of the outside traffic lane at this location and was traveling along the outside edge of the lane and proper direction when the impact occurred."

As a part of his work on this matter, Dr. Ogden reviewed and studied relevant "rules of the road" as they apply to both drivers of vehicles and bicyclists using highways and roadways. (Dkt. 32-6 at 3-4.) Most notably, he reviewed the section of Idaho Code providing that any operator of "a bicycle on a roadway…shall ride as close as practicable to the right-hand curb or edge of the roadway." *Id.* at 4; I.C. § 49-717(1).

Considering Dr. Ogden's background, expertise, and the content of his report in this case, the Court finds Dr. Ogden is qualified to offer an opinion about where Grossklaus was positionally located on the roadway. He is also qualified to offer an

opinion about his understanding of the provisions of Idaho Code Section 49-717(1)—i.e. where, under the code, a bicyclist on a highway like Highway 12 is permitted to travel or be located. He may not, however, offer an opinion in the form of a legal conclusion that Ms. Grossklaus was *legally entitled* to be in the location she was prior to and at the time of impact. Provided the foregoing, in this limited respect, the Court provides this guidance regarding the extent to which Defendants' objection, if made at the time of trial, likely will be sustained. Plaintiff's counsel is directed to advise Dr. Ogden consistent with this guidance and to avoid questions that would elicit this sub-opinion.

### 3. *The Opinions of Dr. Barros-Bailey and Dr. Beaver*

Defendants argue that certain opinions offered by Plaintiff's expert witnesses – Mary Barros-Bailey, Ph.D., CRC, and Craig W. Beaver, Ph.D., ABPP-CN– are irrelevant and should be excluded from their testimony. The doctors were retained to determine the cost of future medical treatment that Grossklaus's son, Hunter,[4] will incur over the course of his lifetime. According to Plaintiff, the purpose of the expert witness testimony will be to establish how much it will cost Hunter and his family to pay for the care his mother was providing him prior to her death. Defendants argue the doctors' opinions as to the cost of Hunter's future medical care are irrelevant, because Hunter was not injured or present at the accident, and care for pre-existing disabilities is not related to his mother's death. Further, Defendants note that, after his mother's death, Hunter's father took over

---

[4] At the March 21, 2019 hearing on the motions *in limine*, the Court was advised by Plaintiff's counsel that Hunter changed his name from "Kevin" to "Hunter" at some point after his mother's death.

all of the caregiving actions that Grossklaus had provided, and that there is no evidence Hunter's father is being paid for assumption of his son's care.

In response, Plaintiff cites Idaho's wrongful death statute, arguing it contains expansive language allowing for damages "under all the circumstances of the case as may be just" and that such damages are recoverable by the decedent's children (citing I.C. § 5-311(1)). In light of Hunter's potential for recovery, Plaintiff contends that evidence presented by Drs. Barros-Bailey and Beaver "concerning the nature, extent, and likely cost of the support and services provided to Hunter by his mother prior to her death is, without question, relevant to these proceedings." (Dkt. 57 at 5.)

Idaho's wrongful death statute, codified at Idaho Code Section 5-311, provides in pertinent part as follows:

> When the death of a person is caused by the wrongful act or neglect of another, … her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death…. In every action under this section, such damages may be given as under all the circumstances of the case as may be just.
>
> For the purposes of this section…, "heirs" means:
>
> (a) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of subsection (22) of section 15-1-201, Idaho Code.
>
> (b) Whether or not qualified under subsection (2)(a) of this section, the decedent's spouse, children, stepchildren, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate child of the father unless the father has recognized a responsibility for the child's support.
>
>   1. "Support" includes contributions in kind as well as money.

2. "Services" means tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the heirs of the decedent. These services may vary according to the identity of the decedent and heir and shall be determined under the particular facts of each case.

Idaho Code § 5-311.

"Fixing the amount of damages to be awarded, in a case involving death by wrongful act or negligence, is the duty and responsibility of the jury." *Hepp v. Ader*, 130 P.2d 859, 860 (1942). A recovery may not be had under the wrongful death statute for grief and anguish suffered by surviving relatives of the deceased, but it may be had for loss of society, companionship, comfort, protection, guidance, advice, intellectual training, etc. 130 P.2d at 860. General damages, such as loss of society and companionship, "will be presumed upon the death when he plaintiff is the spouse, parent or child of the decedent." *Horner v. Sani-Top, Inc.*, 141 P.3d 1099, 1106 (2006). Special damages, however, are not presumed and a "plaintiff must put on some type of proof to support the damage award." *Id.* In other words, "compensatory awards based on speculation and conjecture" are not allowed. *Id.*

When the Court considers an award of damages for future losses, such as the losses claimed here related to Hunter's medical care, "the question is whether the plaintiff has proven the damages with reasonable certainty." *Id.* In *Horner*, the Supreme Court of Idaho considered what would constitute sufficient guidance for the jury to determine what it would cost the parents of a deceased child for the loss of the decedent's future caring for her sister, parents, and grandparents. *Id.* In that case, the court found there was

no evidence in the record to support the economic damages award from the jury related to the loss of the decedent child's financial support.[5]

Thus, Idaho's wrongful death statute has been interpreted to allow plaintiffs to claim loss of future economic support in the form of the what it would cost survivors to pay for the loss of a decedent's future care of them or their family members. However, such damages must be proved with reasonable certainty for consideration by the jury.

For this reason, the Court finds the testimony of Drs. Barros-Bailey and Beaver related to the cost of a caregiver or institutional care for Hunter to replace the type, nature, and extent of care provided by his mother is opinion testimony relevant to Plaintiff's damages claims, and will deny Defendants' motion *in limine* in this regard. The Court finds also the testimony of Drs. Barros-Bailey and Beaver related to the future medical care costs relevant, to the extent that Plaintiff can prove, with reasonable certainty, that Grossklaus did provide and would have continued to provide future financial support—i.e. that she paid for healthcare services he received.[6]

**5.** ***Evidence of Insurance***

Defendants argue Plaintiff should be precluded from offering any evidence, testimony, exhibits, or argument regarding the existence or non-existence of insurance,

---

[5] On appeal, the Supreme Court of Idaho reversed the district judge's decision on the award of economic damages related to the alleged loss of support because the record did not support such damages, but not because such damages are not available under the law if supported by evidence. *Horner* at 1107.

[6] Defendants assert that there is no evidence Grossklaus was paying for Hunter's medical treatment prior to her death. If this is indeed the case, the Court notes Plaintiff would fail to meet her burden of proving costs for loss of future medical expense support.

asserting it is unfairly prejudicial under Federal Rule of Evidence 403 and expressly inadmissible as to liability insurance under Federal Rule of Evidence Rule 411. In response to this aspect of the motion, Plaintiff argues that Rule 411 does not provide a blanket prohibition on evidence of insurance and thus would be premature for the Court to grant Defendants' motion. However, at the March 31, 2019 hearing, Plaintiff's counsel agreed that any evidence of liability insurance is inadmissible.

Rule 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. However, the rule also provides that the Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." *Id.* Although the rule clearly allows for admission of evidence of insurance, it is only under limited and narrow circumstances.

Therefore, following the agreement of the parties on the law, and the dictates of Rule 411, the Court will grant Defendants' motion as to evidence of liability insurance.

### 6. *Deputy Jared Declining to Speak with ISP Investigators*

Defendants assert the Court should preclude Ms. Kucirek and Plaintiff's counsel from mentioning during trial that Deputy Jared declined to speak with Idaho State Police (ISP) investigators at the scene of the collision on the advice of counsel. Defendants assert the evidence is irrelevant under Rule 401 and unfairly prejudicial under Rule 403. In response, Plaintiff argues it would be premature for the Court to rule that this evidence cannot be referenced at trial because, for instance, Deputy Jared might testify that he fully

cooperated with all investigations—thus making such evidence relevant for impeachment purposes.

Evidence is relevant if "it has any tendency to make a fact more or less probable that it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. In this instance, the evidence is a fact—that Deputy Jared did not give a statement at the scene of the accident. Standing alone at this time, the fact is not relevant to the parties' claims and defenses. Furthermore, Rule 403 gives the Court "power to exclude evidence where the danger of prejudice outweighs the explanatory value." *Hill v. Rolleri*, 615 F.2d 886, 890 (9th Cir. 1980). An arrest is not considered evidence of guilt and a traffic citation is not considered evidence of negligence. *Id.* Refusing to provide a statement to investigators at the scene of an accident should also not be considered evidence of negligence or guilt.

Thus, the Court will grant Defendants' motion and exclude the fact that Deputy Jared did not give a statement to ISP investigators. However, the Court is sensitive to the possibility that this fact could be used for impeachment purposes if Deputy Jared testifies to cooperating with the ISP investigation at trial. Furthermore, this ruling does not preclude any evidence regarding other persons or entities that Deputy Jared may have talked to at the scene of the collision or at any time thereafter.

## A.     Plaintiff's Motion *in Limine*

Plaintiff's motion *in limine* has two parts. First, Plaintiff argues the Court should bar the Defendants from presenting evidence or referring during trial to Ms. Grossklaus's

mental health history, including prior acts related to her behaviors committed with the intent to cause self-harm. Second, Plaintiff argues that the Court should exclude the entirety of the coroner's report. The Court will discuss the merits of each part of Plaintiff's motion below.

### 1. *Evidence Related to Mental Health and Prior Acts*

Plaintiff asks the Court to "bar the Defendants from making presentation or reference to the jury regarding suicide and Theresa Grossklaus" in anticipation that "Defendants will seek to introduce evidence that prior to be [sic] struck and killed by Clearwater County Deputy Sheriff Mitchell B. Jared, Grossklaus had recently been discharged from involuntary admission at Hospital State North in Orofino Idaho after driving her vehicle into a tree in an attempt to injure herself." (Dkt. 52 at 2; 4.) Plaintiff argues this evidence is irrelevant under Rule 401. Plaintiff argues also that evidence of Ms. Grossklaus's prior acts is inadmissible propensity evidence barred by Rule 404(b)(1). In the alternative, Plaintiff argues that, even if the Court determines under Rule 404(b)(2), that the prior acts evidence is relevant to show Ms. Grossklaus had a motive, intent, or plan to place herself in harm's way the day of the collision, the evidence is nevertheless more prejudicial than probative and thus inadmissible under Rule 403. The Court will analyze each portion of the argument below.

### i. Relevancy: Rule 401; 402

Evidence is relevant if "it has any tendency" to make a "fact of consequence in determining the action" any "more or less probable than it would be without the

evidence." Fed. R. Evid. 401. Here, facts of consequence are any facts showing how Ms.

Grossklaus was operating or riding the bicycle—i.e., whether she was riding in an unsafe

or unlawful manner on the day of the collision. Plaintiff argues that evidence of Ms.

Grossklaus's mental health status and prior attempts to harm herself and gain attention

are irrelevant to determining if she was negligent in riding the bicycle on Highway 12 on

the day of the collision. Defendants assert the evidence is highly relevant, as it shows it

was Ms. Grossklaus's intent or plan to put herself in harm's way that day and explains

her allegedly negligent actions—including eyewitness accounts that she was weaving in

and out of the traffic lane. Provided the threshold for relevance, the Court finds that

evidence of Ms. Grossklaus's prior acts is probative of whether she was riding the bicycle

in a manner by which the jury could conclude she was negligent on the day of the

collision, and is thus relevant under Rule 401.

ii.  Prior Acts: Rule 404(b)(1) and Rule 404(b)(2)

Once found relevant, the admissibility of evidence of prior acts is governed by

Federal Rule of Evidence 404(b), which applies in both criminal and civil cases.

*Huddleston v. United States*, 485 U.S. 681, 685 (1988). The rule provides that evidence

of other acts "is not admissible to prove a person's character in order to show that on a

particular occasion the person acted in accordance with the character." Fed. R. Evid.

404(b)(1). However, the evidence "may be admissible for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

mistake, or lack of accident. *Id.* at 404(b)(2). Rule 404(b) is a "rule of inclusion" and

unless the evidence of other acts "tends only to prove propensity, it is admissible." *United States v. Jackson*, 84 F.3d 1154, 1159 (9th Cir. 1996).

Courts consider various factors to determine whether evidence of prior acts is admissible. The United States Court of Appeals for the Ninth Circuit has "held that evidence is admissible under Rule 404(b) if: (1) sufficient proof exists for the jury to find that the defendant committed the prior act; (2) the prior act was not too remote in time; and (3) the prior act is introduced to prove a material issue in the case." *United States v. Hadley*, 918 F.2d 848, 850–51 (9th Cir. 1990). Evidence of prior acts "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston*, 485 U.S. at 685. As a "threshold inquiry" the Court must determine whether the prior acts "evidence is probative of a material issue other than character." *Id.*

The Defendants' theory in this regard is that Ms. Grossklaus had recently engaged in a series of other acts to attempt self-harm; they argue such prior acts are probative of whether she was attempting to do the same the day of the collision that resulted in her death. (Dkt. 55 at 8.) As support for their argument, Defendants rely heavily on *Boyd v. City of San Francisco*, a case where an individual was shot and killed by a police officer after a high speed car chase. 576 F.3d 938, 942 (9th Cir. 2009). On appeal, the Ninth Circuit upheld the trial court's decision to allow evidence of the decedent's prior acts to be presented to the jury. *Id.* The evidence included specific and recent interactions

between the decedent and law enforcement officers during traffic stops. *Id.* The court found the evidence was admissible under Rule 404(b), "to the extent that being shot by police was [the decedent's] plan, intent or motive." *Id.* at 947.

Here, for evidence of Ms. Grossklaus's prior acts to be admissible, the Court needs to find similarly to the court in *Boyd*—that Ms. Grossklaus's prior acts support the theory that it was her plan, intent or motive to put herself in harm's way the day of the collision. As stated above, a determination of whether prior acts are probative of a material issue in the case is often made through consideration of the temporal proximity and similarity to the act in question.

The act in question –the collision– occurred on July 18, 2014. Ms. Grossklaus committed the prior acts on April 24, 25, and 28 of 2014. (Dkt. 56 at 10-11.) The prior undisputed acts constituted running a vehicle driven by herself with no passengers on board off the surface of the roadway into a ditch and into stationary objects—a tree and a roadway sign. *Id.* Ms. Grossklaus also made a fourth attempt to carry out a similar plan on May 5, 2014, but was stopped by a police officer when he recognized the car she was driving from one of the previous incidents. (Dkt. 56 at 14-15.) After her fourth attempt, Ms. Grossklaus was detained and hospitalized at State Hospital North in Orofino, Idaho from May 5, 2014, through July 2, 2014. (Dkt. 55 at 4.) While at the facility, she received mental health care treatment to address the delusional beliefs that lead to her attention

seeking attempts at self-harm. Ms. Grossklaus was released on July 2, 2014, sixteen days prior to the collision.[7]

Considering the frequency of the acts of self-harm prior to her hospitalization, and the relatively short timeframe from her release to the time of the collision, the Court finds the acts temporally proximate and this factor favors admission of the prior acts to show intent, plan or lack of accident. The Court makes this finding, particularly noting the opinions of Plaintiff's expert witness, Vernon Neppe, M.D., PhD, who acknowledged that the implication by Defendants that Ms. Grossklaus swerved toward Deputy Jared's truck could indicate suicidal intention or that the probability of this being an attempt by Ms. Grossklaus to draw attention to herself was 21 to 30 percent. (Dkt. 52 at 20; Dkt. 60 at 4.) This opinion was based in part on Dr. Neppe's knowledge and consideration of Ms. Grossklaus's prior acts.

Relatedly, the Court finds also that the prior acts, which have been described as attention seeking behavior through self-harm involving a motor vehicle, are sufficiently similar to be probative of whether Ms. Grossklaus was negligently operating the bicycle at the time of the collision with Deputy Jared's truck through a similar attention seeking effort.

---

[7] According to evidence in the record, Ms. Grossklaus visited her primary care physician, Joshua Morris, M.D., on July 11, 2014. (Dkt. 56 at 18.) According to Dr. Morris's notes, she appeared to have "insight" that day regarding her past behaviors. *Id.* During the hearing on the motion *in limine*, counsel indicated that Dr. Morris also noted she was still experiencing some delusional thoughts but set her next checkup appointment three months later.

### iii. <u>Unfair Prejudice, Confusing the Jury: Rule 403</u>

Once evidence of prior acts is found probative of intent, plan or lack of accident under Rule 404(b)(2), the Court must consider whether the evidence is nevertheless barred under Federal Rule of Evidence 403. This Rule provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court has carefully considered the probative value of the evidence of Ms. Grossklaus's prior acts to attempt to show she was contributorily negligent, and finds the probative value of the evidence is not substantially outweighed by the danger of any of the Rule 403 effects. The evidence of Ms. Grossklaus's prior acts and mental health status is extrinsic evidence that is relevant to why she potentially was weaving in and out of traffic on the highway on the day of the collision. Because Ms. Grossklaus is not available as a witness, this and other extrinsic evidence may be critical to the jury's resolution of a disputed issue central to this case—whether Ms. Grossklaus intended to put herself in harm's way on the day of the collision and contributed to cause her injuries. This probative value is set against the potential that the jury may be prejudiced or confused as to the ultimate issue before it—which is to decide if Deputy Jared was negligent and to what degree, and to decide if Ms. Grossklaus was contributorily negligent and to what degree, and ultimately, to compare any findings of fault.

The Court is aware of evidence in the record Plaintiff may use to establish the truth as she sees it—evidence showing that Ms. Grossklaus was taking her medications as prescribed after release from the health care facility; that was released without any restrictions—including no restrictions preventing operation of a bicycle on the roadway; that she had taken safety precautions that day—including wearing a helmet; and evidence showing that Deputy Jared may not have even seen Ms. Grossklaus prior to hitting her—making any probability that Ms. Grossklaus intended to place herself in the path of harm potentially less impactful in the jury's ultimate determination of negligence and fault.

For the foregoing reasons, the Court will deny Plaintiff's motion *in limine* as it applies to evidence of Ms. Grossklaus's prior acts of attempting to seek attention through acts of self-harm. However, the prior acts evidence may be presented only to show, as Defendants allege, that it was Ms. Grossklaus's intent or plan, the day of the collision, to put herself in harm's way. As such, the Court finds that the mental health treatment Ms. Grossklaus received after the prior acts, as well in the days leading up to the collision, is conditionally relevant to the extent it specifically supports the Defendants' claim of contributory negligence or the Plaintiff's defense against that claim.

To this end, the Court will order the parties to meet and confer prior to trial with the goal of reaching agreement about the manner by which evidence related to this set of facts will be presented to the jury, i.e., the witnesses and documents from which the evidence will be offered. The Court will also consider limiting instructions regarding this field of evidence, if appropriate. Further, the Court will schedule a status conference with

counsel before trial commences to discuss the parameters of the evidence and reference to the same that will be allowed, limited, or disallowed during voir dire, opening statements, and trial.[8]

## 2.    *The Coroner's Report*

Clearwater County Coroner William Rambeau produced a report after Ms. Grossklaus's death that identified his conclusions regarding both the cause and manner of her death. (Dkt. 52 at 11-12.) The report concluded Ms. Grossklaus purposefully rode into the path of the patrol vehicle—and the manner of her death was suicide. *Id.* at 12. Although the report is hearsay, it is admissible under the publics record exception to the rule against hearsay. *See* Fed. R. Evid. 803(8). Plaintiff does not challenge its admissibility under the exception, but asserts the report in its entirety is inadmissible because it is untrustworthy. Defendants' memorandum in opposition to Plaintiff's motion *in limine* supplies no argument in response to this portion of Plaintiff's motion. (Dkt. 55.)

It is within the Court's discretion and its duty to exclude an entire report or portions of a report if determined to be untrustworthy. *United States v. De La Cruz*, 469 F.3d 1064, 1069 (7th Cir. 2006). Federal Rule of Evidence 803 provides that records or statements of public office, such as a coroner's report, are admissible if "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Civ. P. 803(8)(B).

---

[8] Court directs the parties to take note of the requirements related to the content of the witness lists set forth in the Court's Trial Scheduling Order, Section 3(c). (Dkt. 65.)

In this case, Plaintiff challenges the trustworthiness of the coroner's report by asserting that Mr. Rambeau failed to conduct a fact-finding inquest or full autopsy prior to issuing his conclusions. Plaintiff argues that Mr. Rambeau's deposition highlights "how what little fact-finding he was engaged in was contaminated by his apparent desire to seek only facts that fit his conclusion as opposed to a conclusion that fit the facts of the case." (Dkt. 52 at 6.) Specifically, Plaintiff points out that Ms. Grossklaus's family members expressed doubts as to the possibility that their mother's manner of death was suicide and requested that Mr. Rambeau contact the mental health facility from which Ms. Grossklaus had recently been released. Although Mr. Rambeau did contact the facility, Plaintiff argues he immediately dismissed any evidence offered by the healthcare providers at the facility. Indeed, in his deposition, Mr. Rambeau testified that he spoke with a physician and nurse practitioner at the facility. (Dkt. 53 at 11.) When asked about what the physician told him about Ms. Grossklaus's condition upon release, Mr. Rambeau replied, "[t]he physician was in remarkable cover his butt mode." *Id.* Asked to explain, Mr. Rambeau testified that the physician had said Ms. Grossklaus was "perfect when she left." *Id.* Mr. Rambeau indicated that he thought the reason for the physician reporting Ms. Grossklaus left in good mental condition was to prevent being blamed for her death.

Plaintiff also argues that Mr. Rambeau's report suggests that Ms. Grossklaus's primary care physician, Joshua Morris, M.D., told Mr. Rambeau that he believed Ms. Grossklaus committed suicide. (Dkt. 52 at 7.) Plaintiff asserts, however, that Mr.

Rambeau's deposition makes clear that he "solicited this conclusion by first telling Dr. Morris that Grossklaus's was in an accident that appeared to be self-inflicted." *Id.* In sum, Plaintiff asserts that Mr. Rambeau's reliance on selective information raises concerns of bias and any probative value the report may have is undermined by "slanted" and limited fact-finding. The Court agrees.

In the coroner's report, Mr. Rambeau noted that Ms. Grossklaus was considered stable on discharge and her nurse practitioner denied suicidal ideation. (Dkt. 52 at 12.) Mr. Rambeau noted also that he spoke with her physician at the facility, and to that end, the report states that he "did not receive any useful information for [the] discussion." *Id.* Thus, Mr. Rambeau omitted or failed to give weight to the opinion of Ms. Grossklaus's physician that she was stable upon release. Mr. Rambeau's deposition testimony suggests he decided the physician was in "remarkable cover his butt mode" and thus was not giving an honest assessment of Ms. Grossklaus's mental health status upon release. The Court notes also that, when Mr. Rambeau spoke with Dr. Morris about the dynamics of the collision, he did not provide Dr. Morris with a fully accurate account of the events leading to Ms. Grossklaus's death. (*See* Rambeau Dec., Dkt. 53 at 13; 29.)

In addition to these facts indicating the coroner's report is not trustworthy, the report states other information as facts that, based on the record before the Court, are either not true or have been called into serious question. For example, the coroner's report states that a full autopsy was performed on Ms. Grossklaus's body. (Dkt. 52 at 11.) However, facts in the record show only a partial autopsy was performed. *Id.* at 20.

Additionally, although Mr. Rambeau reported that he checked for the presence of certain medications in Ms. Grossklaus's blood, evidence suggests that the blood screen test performed on Ms. Grossklaus's blood sample was not capable of detecting some of those medications. *Id.* at 11; 20. Finally, and importantly, is that no other expert identified in the record before the Court also concluded so unequivocally that the manner of Ms. Grossklaus's death was suicide. This includes Defendants' medical expert, Douglas P. Robinson, M.D. who concluded it was unlikely Ms. Grossklaus had the intent or plan to die. (Dkt. 56 at 3.)

For these reasons and those articulated by Plaintiff, the Court finds the coroner's report lacks trustworthiness and thus will grant Plaintiff's motion to exclude the entire report from evidence. In addition to the coroner's report being excluded from evidence, no testimony, evidence or argument may be presented to the jury that in any way references the legal and factual conclusion made by the coroner that the manner of Ms. Grossklaus's death was suicide.

## CONCLUSION

Justice demands that the parties to this case receive a fair trial. Any storyteller would agree that many of the facts about Ms. Grossklaus's life immediately prior to the collision are compelling. However, the duty of the Court is to ensure that a compelling story does not get in the way of the charge of the jury—which is to determine whether on July 18, 2014, Deputy Jared was negligent in the operation of his vehicle and whether Ms. Grossklaus was negligent in the operation of her bicycle in such a way that her

negligence contributed to the collision. It is also the duty of counsel to fairly and

zealously advocate for their clients. The Court encourages the parties to keep these duties

in mind as they prepare to present their cases to the jury.

## ORDER

**NOW THERFORE, IT IS HEREBY ORDERED:**

1. Defendant's Motion *in Limine* regarding Carla Kucirek's testimony (Dkt. 50), is **DENIED** with respect to Carla Kucirek's testimony regarding Theresa Grossklaus's medications.

2. Defendant's Motion *in Limine* regarding Carla Kucirek's testimony (Dkt. 50), is **GRANTED** with respect to Carla Kucirek's testimony regarding what she was told by Idaho State Police investigators.

3. Defendant's Motion *in Limine* regarding Dr. Ogden's testimony (Dkt. 50), is **DENIED** with respect to his opinions regarding Deputy Jared's attention or inattention on the roadway prior to the collision.

4. Defendant's Motion *in Limine* regarding Dr. Ogden's testimony (Dkt. 50), **is neither granted nor denied** with respect to any opinions drawing a conclusion about Ms. Grossklaus's position in the roadway. The Court will entertain objections at trial in line with the guidance provided above.

5. Defendant's Motion *in Limine* regarding Dr. Barros-Bailey's and Dr. Beaver's opinion testimony (Dkt. 50), is **DENIED**, with respect to the doctor's testimony concerning cost of a caregiver or institutional care for Theresa Grossklaus's son.

6. Defendant's Motion *in Limine* regarding evidence of liability insurance (Dkt. 50), is **GRANTED**.

7. Defendant's Motion *in Limine* regarding Deputy Jared declining to speak to Idaho State Police investigators (Dkt. 50), is **GRANTED**.

8. Plaintiff's Motion *in Limine* regarding Theresa Grossklaus's prior acts (Dkt. 51), is **DENIED** as it applies to evidence of Ms. Grossklaus's prior harm-seeking or attention-seeking acts. However, the parties may not introduce evidence of the nature or subject of Ms. Grossklaus's beliefs that led her to commit the prior acts. Plaintiff's motion is also denied in so far as it seeks to exclude evidence that Ms. Grossklaus

received mental health treatment after committing the prior acts or regarding her mental health status in the days leading up to the collision. But, evidence in this regard will not be unlimited and will be discussed further with the Court prior to trial as discussed above.

9. Plaintiff's Motion *in Limine* regarding the coroner's report (Dkt. 51), is **GRANTED**.

DATED: March 29, 2019

Candy W. Dale
U.S. Magistrate Judge